UNITED STATES v. NATIONAL SURETY CO. OF KANSAS CITY, MO.

(District Court, W. D. Kentucky.   December 17, 1901.)

INTERNAL REVENUE—DISTILLER'S ANNUAL BOND—SCOPE OF OBLIGATION.

A distiller's "annual bond," given pursuant to Rev. St. § 3260, and conditioned that he "shall faithfully comply with all the provisions of law relating to the duties and business of distillers, and shall pay all penalties incurred or fines imposed on him for a violation of any of the said provisions," and shall keep the property free from liens, does not bind the sureties therein to the payment of taxes on distilled spirits, which the distiller has properly deposited in a bonded warehouse, and for the payment of the taxes on which he has given a warehouse bond as required by section 3293, which has been accepted by the government; but the "duties of a distiller," within the meaning of the statute and bond, must be considered as having been performed with respect to such spirits when they are so deposited, and an acceptable warehouse bond given, specifically securing the payment of the taxes thereon.

Action on Distiller's Bond.   On demurrer to reply.

·R. D. Hill, U. S. Atty.

Jas. C. Poston and R. T. Hough, for defendant.

EVANS, District Judge.   This action was instituted by the United States against the defendant on a bond executed by Wilson Howard, a distiller, who is now deceased, as principal, and by the defendant as his surety thereon.   The bond is as follows:

"Know all men by these presents, that we, Wilson Howard, of Laurel Creek, Kentucky, as principal, and National Surety Co., of Kansas City, Mo., as sureties, are held and firmly bound unto the United States of America in the full and just sum of four hundred dollars, money of the United States, to which payment, well and truly to be made, we jointly and severally bind ourselves, our heirs, executors, and administrators, firmly by these presents.   Sealed with our seals, and dated this 8th day of October, A. D. 1896.   The condition of the foregoing obligation is such that whereas, the said Wilson Howard has been engaged in the business of distilling on and after the·1st day of May, 1896, and now intends to be engaged in the busi- ·ness of a distiller, under the name or style of Wilson Howard, within the 8th collection district of the state of Kentucky, to wit, at distillery No. 126, situate in the vicinity of Laurel Creek, county of Clay, and state aforesaid: Now, therefore, if the said Wilson Howard shall in all respects faithfully comply with all the provisions of law in relation to the duties and business óf distillers, and shall pay all penalties incurred or fines imposed on him for a violation of any of the said provisions, and has not suffered and shall not suffer the lot or tract of land on which the· distillery stands, or any part thereof, or any of the distilling apparatus, to be incumbered by mortgage, judgment, or other lien during the time in which he has and shall carry on said business, then this obligation shall be void; otherwise it shall remain in full force.   We, the undersigned obligors, do hereby stipulate and agree to be held to and bound by our several obligations under this bond on and after May 1st, 1896, the same as though bond had been executed and ap- proved on that day."

The only breaches of its terms alleged in the plaintiff's petition as amended to which reference need be made are, in substance, that certain of the spirits produced by the distiller, after being deposited in the warehouse, were removed therefrom by him without the pay- ment of the taxes due thereon to the plaintiff.   To these averments

of the plaintiff's petition as amended the defendant answered as follows:

"That each and every package of spirits mentioned in said amended petition as being manufactured and warehoused by said distiller, Wilson Howard, was lawfully entered and deposited in a distillery warehouse approved by plaintiff, and a bond executed and delivered by said Wilson Howard and accepted by the plaintiff conditioned for the payment of the tax upon such spirits in strict accordance with the laws and regulations made by plaintiff. And that plaintiff has sued and obtained judgment against the obligors on said warehousing bonds against the persons executing the same, and defendant denies that it has not well and truly kept, observed, and complied with every condition and requirement of the bond set forth in this suit."

To the matter thus pleaded by the defendant the plaintiff replied as follows:

"The plaintiff, the United States of America, for reply to the answer of the defendant, states that execution issued on its judgment against the obligors on the warehousing bonds mentioned by defendant in its answer as soon as it could procure execution thereon; that said execution was issued before the 1st day of July, 1900, was directed to the marshal of the district of Kentucky, and while same was in full force and effect was placed in the hands of said marshal to execute, and said marshal, after duly attempting to collect same, failed to and could not collect it or any part thereof, and on the 4th day of December, 1900, returned said execution to the office of the clerk of this court in substance, 'No property found to make same or any part thereof,' December 4, 1900. The plaintiff further states that the surety in each and all of said warehousing bonds is William Bishop; that William Bishop has no property whatever subject to debt, and is hopelessly insolvent; that the principal in said warehousing bonds, Wilson Howard, has, since the execution of said bonds, departed this life, and left no property whatever to pay any of his indebtedness."

The defendant has demurred to the reply. The demurrer has brought into review, of course, all the pleadings in the case, the answer included, and has thus raised the important question which is to be determined, and which has received the very careful consideration of the court.

The internal revenue laws (section 3260, Rev. St.) as amended (21 Stat. 145) require that every person about to engage in the business of a distiller shall, among other things, execute a bond, which, in internal revenue parlance, is usually known as the "distiller's annual bond"; the provisions of that section, so far as applicable to this case, being as follows:

"Every person intending to commence or to continue the business of a distiller shall, on filing with the collector his notice of such intention, and before proceeding with such business, and on the first day of May of each succeeding year, execute a bond in the form prescribed by the commissioner of internal revenue, conditioned that he shall faithfully comply with all the provisions of law relating to the duties and business of distillers, and shall pay all penalties incurred or fines imposed on him for a violation of any of the said provisions; and that he shall not suffer the lot or tract of land on which the distillery stands, or any part thereof, or any of the distilling apparatus, to be incumbered by mortgage, judgment, or other lien, during the time in which he shall carry on said business. Said bond shall be with at least two sureties, approved by the collector of the district, and for a penal sum of not less than  *  *  *,  the amount of tax on the spirits that can be distilled in his distillery during a period of fifteen days. But in no case shall the bond exceed the sum of one hundred thousand dollars."

Many other duties are imposed upon the distiller. Under sections 3287 et seq., spirits are required to be drawn from the receiving cistern, and placed in packages, and, after being gauged, the following· requirements are prescribed by section 3293 as amended (21 Stat. 145), which is in this language:

"The distiller (or owner) of all spirits removed as aforesaid to the distillery warehouse shall, on the first day of each month, or within five days thereafter, enter the same for deposit in such warehouse, under such regulations as the commissioner of internal revenue may prescribe. Said entry shall be in triplicate, and shall contain the name of the person making the entry, the designation of the warehouse in which the deposit is made, and the date thereof, and shall be in the following form:

" 'Entry for Deposit in Distillery Warehouse.

" 'Entry of distilled spirits deposited by ———, in distillery warehouse ——— in the ——— district, state of ———, during the month ending on the ——— day of ——— Anno Domini ———.'

"And the entry shall specify the kind of spirits, the whole number of packages, the marks and serial numbers thereon, the number of gauge or wine gallons, proof gallons, and taxable gallons, and the amount of tax on the spirits contained in them; all of which shall be verified by the oath of the distillery (or owner) of the same attached to the entry. The said distiller (or owner) shall at the time of making said entry give his bond in duplicate, with one or more sureties, satisfactory to the collector of the district, conditioned that the principal named in said bond shall pay the tax on the spirits as specified, in the entry, or cause the same to be paid, before removal from said distillery warehouse, and within (eight) years from the date to said entry; and the penal sum of such bond shall not be less than the amount of the tax on such distilled spirits. One of said entries shall be retained in the office of the collector of the district, one sent to the storekeeper in charge of the warehouse, to be retained and filed in the warehouse, and one sent with duplicate of the bond to the commissioner of internal revenue, to be filed in his office.

"A new bond shall be required in case of the death, insolvency or removal of either of the sureties, and may be required in any other contingency affecting its validity or impairing its efficiency, at the discretion of the commissioner of internal revenue. And in case the distiller (or owner) fails or refuses to give the bond hereinbefore required or to renew the same, or neglects to immediately withdraw the spirits and pay the tax thereon, or if he neglects to withdraw any bonded spirits and pay the tax thereon before the expiration of the time limited in the bond, the collector shall proceed to collect the tax by distraint, issuing his warrant of distraint for the amount of tax found to be due, as ascertained by him from the report of the gauger if no bond was given, or from the terms of the bond if a bond was given. But this provision shall not exclude any other remedy or proceeding provided by law."

This statutory provision sufficiently indicates the necessary stipulations of the warehousing bond, which would mature eight years after its execution, or earlier should the distiller desire to pay the taxes due and take the spirits out of the warehouse. The eight-year bonded period indicates the termination of the limit of the time during which, under the law as it then stood, the spirits might remain in the bonded warehouse for the purpose of maturing before the collection of the taxes. The answer shows in this case that all the spirits distilled by Howard, the taxes upon which are sought to be recovered in this action on the distiller's annual bond, were duly deposited in the proper warehouse pursuant to law, and that when so deposited the distiller executed a bond with the proper stipula-

tions, as required by section 3293, Rev. St., expressly binding the parties thereto for the payment of the taxes to become due eight years thereafter, and upon which bond a person other than the defendant was surety, and which bond was taken by the United States, and duly accepted by it as satisfactory. It is contended upon the part of the plaintiff that the bond thus taken, which is usually called the "warehousing bond," constituted only an additional or cumulative security for the government without in any wise discharging the obligation of the parties to the distiller's annual bond; and that, if the taxes were not paid when they became due, and especially if the sureties on the warehousing bond failed or did not pay, then not only did the stipulations of the first bond cover the case, but that the responsibility of the parties to the distiller's annual bond could be enforced as covering a liability for the taxes, notwithstanding the acceptance of the warehousing bond. On the other hand, it is contended by the defendant not only that a properly strict construction of its obligation as a surety on the bond would exclude any and all liability for "taxes" on the spirits as not being in any event within the exact stipulations of the bond, but also that when the warehousing bonds were given by the distiller and accepted by the United States the distiller had then fully performed every "duty" which he owed as a distiller to the United States, the performance of which, so far as the pending question is concerned, was guarantied by the terms of the distiller's annual bond. Counsel have not been able to furnish the court with any decision of any judicial tribunal directly bearing upon the question, though some opinions are referred to which are supposed to state certain well-established principles of the law of suretyship, or which throw some indirect light upon the question involved. It is to be regretted that the letter of the commissioner of internal revenue, referred to by plaintiff's counsel, does not aid the discussion, but, in view of the fact that sections 7 and 23 of the act of July 20, 1868 (15 Stat. 125), are substantially the same, respectively, as sections 3260, 3293, Rev. St., it might at first blush seem that this case must be ruled by the opinion of the supreme court in Hart v. U. S., 95 U. S. 316, 24 L. Ed. 479; but while, indeed, the distiller's annual bond was there sued upon, it nowhere appears that any warehousing bond was ever given by the distiller. There is therefore an absence from that case of the entire defense relied upon in the case before me, and the question must be disposed of upon considerations other than such as operated in the Hart Case, even if that case should be considered as an authority for holding that the distiller's annual bond covered the taxes on the spirits if the warehousing bond was not given. When the two statutory provisions which have been copied are carefully considered in connection with the two bonds which they require to be given, and when the entire scheme for the collection of internal revenue taxation upon distilled spirits is attentively studied, it does not seem to be very difficult to reach a satisfactory conclusion upon the question now presented between the United States and a surety on the distiller's annual bond as to the liability of the latter for the payment of "taxes" upon the distilled spirits which have been deposited properly in a bonded ware-

house, and for the payment of "taxes" upon which a different bond has been specially given and accepted. It will be seen that the bond sued on, while quite general in its terms in some respects, is quite restricted in others, and that the penalty required by the statute to be named therein is not to be less than the taxes on the spirits that can (doubtless according to its surveyed capacity) be distilled in the distillery during 15 days, but that in no case shall that penalty be fixed in any bond at over $100,000. These specific limitations are regarded as throwing some light upon the question of whether it was the congressional intention that the stipulations of the bond given under section 3260, Rev. St., should cover "taxes" as such, or whether the taxes were to be specifically taken care of by the warehousing bond to be given under section 3293. The bond sued on, when analyzed, shows that the parties thereto agreed that the distiller— First, should faithfully comply with all the provisions of the law relating to the duties and business of distillers; second, that he should pay all penalties incurred or fines imposed on him for the violation of any of the said provisions; and, third, that he should not suffer the lot or tract of land on which the distillery stands, or any part thereof, or any distillery apparatus, to be incumbered by mortgage, judgment, or other lien during the time in which he shall carry on said business. Strictly construed, these stipulations do not relate to "taxes" eo nomine, and, applying any reasonable construction to sections 3260 and 3293, considered in pari materia, and as originally parts of the same act of congress, viz. the act of July 20, 1868, can any other result be reached in a case where the distiller has performed the duty of depositing the spirits in the bonded warehouse, and has executed the bond then required of him? It seems to me not. In considering the concrete case before me, it seems to me that those two statutory clauses, and the bonds their provisions expressly and separately call for, demand that I must hold that when the spirits were deposited, and the warehousing bonds given, and accepted by the United States, the distiller had performed his "duty" in that respect under his annual bond, and had thereby discharged any possible stipulation or condition covered by that bond by performing the "duty" of depositing the spirits in the warehouse, and giving another bond, acceptable to the United States, under section 3293, "for the payment of the taxes" eight years later. This last bond was in satisfaction of any part of the other bond which embraced the duty of giving it, and thereafter the warehousing bond thus given and thus accepted as satisfactory, together with a lien upon the spirits and upon the premises, guarantied the payment of the taxes, and as to them there was no further liability upon the sureties on the distiller's annual bond. That liability, if it ever existed, was satisfied and discharged by the acceptance of the new bond expressly stipulating for the payment of the taxes eight years later. This construction imposes no real hardship upon the United States, because it not only had that bond and a lien upon the spirits, but, after the spirits had been deposited in the warehouse, they then, to further secure payment of the tax, passed into the custody of the United States, and under the care of its officers, until the taxes were paid.

This custody was protected by the criminal laws and by the heavy penalties imposed by them for any removal of the spirits from the warehouse without the payment to the United States of the taxes due thereon; and whenever the surety on the bond became unsatisfactory a new bond could be required, or the tax on the spirits collected at any time, under section 3293. The wonder is, to a man acquainted with the internal revenue system, that the spirits happened to be removed without such payment. While the United States is not liable, in any positive or direct sense, for the negligence of its officers, still in construing its contracts the same rules of law apply as in case of other litigants; and if it takes, and in the regular way accepts, the statutory warehousing bond, with surety satisfactory to itself, and which it approves, if those sureties turn out to be insufficient, that would not revive any liability of the surety on the distiller's annual bond if that liability had been discharged by the performance by the distiller of the duty of depositing the spirits in the warehouse and giving the proper warehousing bond, which, as here, was accepted by the United States as satisfactory. While, in a certain general way, it may be said that the payment of the taxes due on distilled spirits manufactured by him is one of the "duties" of the distiller in his "business," still, in view of the various statutory provisions to which I have referred, it seems to me that when they are properly construed together the distiller's annual bond, executed under section 3260, considering the omission therefrom of any express stipulation for the payment of taxes as such, must be considered to have reference to other things, which are more accurately embraced in the phrase "duties and business of distillers," while a warehousing bond, when actually given and accepted as satisfactory, under section 3293, by reason of its being expressly limited to the stipulation that the distiller "shall pay the taxes on the spirits," or cause them to be paid, must be construed to cover matters never intended to be covered by the distiller's annual bond after the warehousing bond was accepted. The two bonds, like the two separate provisions of the statute under which they are separately given, were meant to relate to different things, though the two together were intended to cover the entire ground, the one ending when and where the other began; the burden at that point being transferred from the shoulders of one to those of the other. Indeed, when we recall and consider the very important fact that sections 3260, 3293, Rev. St., were, in substance, sections 7 and 23 of the act of July 20, 1868, which was designed to provide a comprehensive internal revenue system, it seems unreasonable to suppose that by those separate and distinct clauses of the one act congress intended that the two distinct bonds thus provided for should cover the same field or perform the same function. Making separate the two provisions was a useless and vain thing if congress intended that the two bonds should be otherwise than separate also, and these considerations seem clearly to establish the soundness of the construction I have placed upon the two sections. That construction results in the definite conclusion in this case that as to the tax on the distilled spirits the defendant, the surety, was discharged from liability under the annual bond when the distiller gave

the proper warehousing bond, which was accepted by the plaintiff, though, of course, the distiller, the principal in each bond, always remains liable until the tax is paid.

The cases cited from the Kentucky Reports, where the sheriff had given an "additional" bond under express statutory provisions upon the subject, do not seem to reach the question involved here, where the first bond seems clearly to reach, to say the least, no further than the requirement and condition that the spirits shall be deposited in the warehouse, and that a proper bond shall then be given under section 3293, failing in which the parties shall be responsible for the omission, but not otherwise. If I correctly read the two statutory provisions, this case is more like that of Dumont v. U. S., 98 U. S. 142, 25 L. Ed. 65, although the resemblance is remote, unless the distiller's annual bond is so far alternative in character as to enable the distiller to discharge it in respect to any distilled spirits, not by paying the tax thereon at once, but by giving the proper warehousing bond, especially stipulating to pay that tax eight years thereafter,—an extension of the time for so doing which is not consented to by the surety on the annual bond, and which, indeed, is not necessary, if my construction of the statute be correct, and possibly not in any event. The distiller's annual bond does not stipulate nor guaranty that the terms of the warehousing bond shall be performed by the parties to it, and the absence of that stipulation in the bond 'sued on may be regarded as one of the crucial tests in the solution of the question now before the court.

Without going more into detail, upon the whole case it seems to the court that the plaintiff's reply does not present anything that is sufficient in law to avoid the legal consequences which it seems to the court must follow if the averments of the defendant's answer are true, and the demurrer to the reply is therefore sustained. The court is also of opinion that the answer of the defendant presents a good defense.